UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC MOULTRIE, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. 3:CV-06-1153 |
| | : | |
| v. | : | (Judge Caputo) |
| | : | |
| LUZERNE COUNTY PRISON, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM**

In a judgment entered on April 7, 2008, the above case was remanded to this Court by the United States Court of Appeals for the Third Circuit. (*See* Doc. 41-1.) The case was reopened by this Court on April 29, 2008.

In its accompanying Opinion, the Third Circuit Court of Appeals stated that, on remand, this Court may consider whether this matter may be ripe for summary judgment. (*See* Doc. 41-2 at 5.) After careful review of the record, this Court concludes that Defendants' Motion for Summary Judgment (Doc. 23) is ripe for disposition. For the reasons set forth below, the Motion will be granted.

## **BACKGROUND**

Plaintiff Eric Moultrie, an inmate presently confined at the Greensburg State Correctional Institution ("SCI-Greensburg") in Greensburg, Pennsylvania, commenced this action by filing a civil rights complaint pursuant to the provisions of 42 U.S.C. § 1983. Named as Defendants are the Luzerne County Correctional Facility ("LCCF"); Corrections

Officer Michael Piontkowski; and Corrections Officer Michael Lynch.[1]  Moultrie alleges that on February 23, 2004, while he was incarcerated at the LCCF, he was physically assaulted by Defendant Piontkowski following an altercation with another inmate and was denied adequate medical care for the resulting injuries.  (*See* Doc. 1-5 at 2, 5-8.)

On May 7, 2007, a Motion for Summary Judgment (Doc. 23) was filed on behalf of Defendants LCCF, Piontkowski, and Lynch.  Defendants also filed a supporting brief (Doc. 25), a Statement of Undisputed Material Facts (Doc. 24) and Exhibits (Doc. 26.)  Moultrie failed to file any opposition to the Motion, and therefore, by Order dated June 18, 2007, he was directed to file his opposition brief and counter-statement of facts within twenty (20) days.  (*See* Doc. 28.)  Moultrie failed to comply with the Court's Order, and therefore, by Order dated July 13, 2007, his Complaint was dismissed for failure to prosecute and failure to comply with a Court Order pursuant to FED. R. CIV. P. 41(b).  (*See* Doc. 29.)

On July 23, 2007, Moultrie filed a Notice of Appeal (Doc. 30).  By Order dated April 7, 2008 (Doc. 40), the Third Circuit Court of Appeals vacated this Court's July 13, 2007 Order and remanded the matter for further proceedings.  In its Opinion (Doc. 41-2), the Third Circuit Court of Appeals stated that it was remanding to this Court for consideration of the factors set forth in *Poulis State Farm Fire & Cas. Co.*, 747 F.2d 863, 869 (3d Cir. 1984) to determine whether dismissal of this case is justified.  However, the Opinion also stated that this Court may consider whether the matter may be ripe for summary judgment.  (*See* Doc. 41-2 at 5.)  Upon review, this Court has determined that Defendants' Motion for Summary

---

1.  Plaintiff also named a Dr. John Doe, three Jane Doe Nurses, a Lieutenant John Doe, and a Sergeant John Doe who never were identified or served with the Complaint.

Judgment is ripe for disposition. Therefore, rather than considering whether this case should be dismissed under FED. R. CIV. P. 41(b), this Court will analyze the merits of the Motion for Summary Judgment.

## LEGAL STANDARD

Summary judgment will be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 249. In considering a summary judgment motion, inferences from the underlying facts must be viewed in the light most favorable to the non-moving party. *P.N. v. Clementon Bd. Of Educ.,* 442 F.3d 848, 852 (3d Cir. 2006).

The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Accordingly, the non-moving party "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for

trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the evidence in favor of the nonmoving party is "merely colorable or not significantly probative," summary judgment should be granted. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994) (abrogated on other grounds)).

Moultrie failed to oppose Defendants Motion for Summary Judgment, and therefore, the Motion is deemed unopposed. Moreover, because Moultrie has failed to file a separate statement of material facts controverting the statement filed by Defendants, all material facts set forth in Defendants' Statement of Undisputed Material Facts (Doc. 24) will be deemed admitted. *See* M.D. Pa. L.R. 56.1.[2] It should also be noted that Moultrie did not

---

2. M.D. Pa. L.R. 56.1 provides, in relevant part, as follows: "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

submit any evidence in response to the evidence submitted by Defendants. Despite these deficiencies, the Court still must analyze the merits of Defendants' Motion to determine whether summary judgment is appropriate. *See Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993); *Anchorage Associates v. Virgin Islands Board of Tax Review*, 922 F.2d 168, 174-75 (3d Cir. 1990).

## DISCUSSION

### I.  Undisputed Facts

Defendants' Statement of Undisputed Material Facts (Doc. 24) and supporting Exhibits[3] (Doc. 26) establish the following:

On December 8, 2003, Moultrie was committed to the LCCF after being found guilty of the following charges: two counts of possession of a controlled substance; possession with intent to sell/distribute (heroin); possession with intent to sell/distribute (cocaine); and possession of drug paraphernalia. (Doc. 24 ¶ 1; Doc. 26-4.)

On February 24, 2004, while Moultrie was incarcerated at LCCF, he was involved in an altercation with another inmate, Jamie Johnson, in Johnson's cell. (Doc. 24 ¶ 2.) Defendant Piontkowski entered the cell to break up the altercation and removed Moultrie from the cell. (*Id.*) As Piontkowski was escorting Moultrie from the cell block, Moultrie suddenly turned in an effort to re-attack inmate Johnson, and Piontkowski was forced to

---

3.  The evidentiary materials submitted by Defendants include Plaintiff's LCCF medical records (Docs. 26-2, 26-3); Plaintiff's Inmate Commitment Summary Report and Criminal Intelligence Report (Doc. 26-4); and affidavits made under penalty of perjury by Defendant Piontkowski (Doc. 26-5 at 1), Defendant Lynch (*id.* at 5), and Nurse John Burke (*id.* at 8).

take Moultrie to the ground to prevent him from further assaulting Johnson. (*Id.*) He then placed handcuffs on Moultrie. (*Id.* ¶ 4-2; Doc. 26-5 at 1, Piontkowski Affidavit.) Piontkowski did not kick, assault, or punch Moultrie at any time. (Doc. 24 ¶ 4-2.)

After Moultrie was handcuffed, Piontkowski stood him up, and Moultrie complained that his right ankle had been injured. (*Id.*) Correctional Officer Carey responded to the scene and assisted Piontkowski in finding an area for Moultrie to sit down to avoid putting pressure on his right ankle. (*Id.*) Piontkowski notified supervisory officers, and Nurse John Burke was contacted to render medical assistance. (*Id.*) Moultrie then was transported to the infirmary for medical evaluation and to have x-rays of his right lower leg. (*Id.*)

When Defendant Lynch responded to the scene, Moultrie was sitting on a gray bin. (Doc. 24 ¶ 5-1; Doc. 26-5 at 5, Lynch Affidavit.) Moultrie then was transported to the infirmary via wheelchair. (Doc. 24 ¶ 5-1.) Lynch did not have any physical contact with Moultrie, and he did not witness any other LCCF employee have any physical contact with Moultrie. (*Id.* ¶ 5-2) He did not witness Piontkowski assault or strike Moultrie in any other way. (*Id.*)

Nurse Burke entered a notation on Moultrie's chart on February 24, 2004 indicating that Moultrie had been involved in an altercation with another inmate. (Doc. 24 ¶ 6-1; Doc. 26-5 at 8, Burke Affidavit.) Moultrie was brought to the infirmary by corrections officers, and Burke took a history from Moultrie in which he indicated that he was unable to move or put any weight on his right ankle. (Doc. 24 ¶ 6-1.) Burke performed a physical examination of Moultrie and observed that his right ankle did not appear to be swollen or

red.  (*Id.*)  Pictures were taken of Moultrie's face, right arm, and ankles.  (*Id.;* Doc. 26-3 at 11-13, Pictures of Moultrie dated 2/24/2004.)

In the early morning hours of February 25, 2004, Burke entered an order on Moultrie's chart for an x-ray of Moultrie's right ankle.  (Doc. 24 ¶ 6-2.)  Moultrie was kicking the door of his cell continually with either his right or his left foot throughout the course of the night of February 24 into the morning of February 25.  (*Id.* ¶ 6-3)

An x-ray taken of Moultrie's right foot on February 25 revealed a fracture at the base of the first metatarsal and a fracture of the shaft of the second metatarsal.  (Doc. 26-2 at 5-6, 2/26/04 Radiology Report.)  The x-ray revealed no fracture of the right ankle.  (*Id.*)  Dr. Kosek immediately was notified, and he referred Moultrie to an orthopedic surgeon for an appointment.  (Doc. 26-2 at 3.)  On February 28, 2004, Moultrie was taken to the orthopedic clinic and returned to the LCCF with a new order to see Dr. Krywicki for a consultation on March 1, 2004.  (*Id.*; Doc. 24 ¶ 6-5.)

On March 3, 2004, a notation was made in Moultrie's chart indicating that he would be having surgery on his right foot and prescribing a one tablet dosage of Vicodin ES three times a day for seven days.  (Doc. 24 ¶ 6-6; Doc. 26-2 at 4.)  Dr. Kosek also made a routine referral for a psychiatric evaluation of Moultrie.[4]  (Doc 24 ¶ 6-6; Doc. 26-2 at 4; Doc. 26-3 at 23, 3/3/04 Psych Referral Form.)

---

4.   Plaintiff's medical records reflect that he previously was referred for a psychiatric evaluation because he was refusing all psychiatric and diabetic medications as well as labs and testing of his blood sugar level.  (Doc. 26-2 at 7, 2/12/04 Psych Referral.)

On March 6, 2004, Moultrie underwent surgery on his right foot at Geisinger Wyoming Valley Medical Center ("Geisinger"). (Doc. 26-2 at 11, 3/6/04 Operative Report.)  Before undergoing surgery, Moultrie was advised of the potential complications associated with a surgery of this nature as well as specific concerns related to surgery on a diabetic. (*Id.*) The surgery, performed by Dr. Hubbard, consisted of an open reduction and internal fixation on Moultrie's right foot using pins and screws to properly align the fracture dislocation and to improve the long-term outcome. (*Id.*)

On March 7, 2004, Moultrie was returned to the LCCF. (Doc. 24 ¶ 6-8; Doc. 26-2 at 4.) Notations on his chart state that Moultrie was given new orders for Percocet, his cast was intact, clean, and dry, and he was using crutches without difficulty. (Doc. 26-2 at 4.) Moultrie was placed in a cell in the infirmary for observation to prevent him from bearing weight on his right foot. (Doc 24 ¶ 6-8.)

On March 8, 2004, Moultrie was evaluated on a follow-up basis at Geisinger. (Doc. 24 ¶ 6-9.) His chart reflects that his foot still was in a cast, he was using crutches, pain medication had been prescribed, and he was to follow-up with Dr. Hubbard in two weeks. (*Id.*; Doc. 26-2 at 4.)

Moultrie's chart reflects that on March 9, 2004, his cast was clean, dry, and intact, and his toes were freely moving. (Doc. 24 ¶ 6-10; Doc. 26-2 at 4.) His chart also reflects that on March 10, 2004, the cast still was clean, dry, and intact, and he was able to move his toes, albeit with difficulty. (Doc. 24 ¶ 6-10; Doc. 26-2 at 4.) Moultrie also was medicated as ordered for pain. (Doc. 26-2 at 4.)

Moultrie's chart reflects that on March 11, 2004, there was no change in his cast and he still was able to move his toes. (*Id.*) He also was given pain medications, which were acting effectively. (*Id.*; Doc. 24 ¶ 6-12.) His chart reflects that on March 12 and 13, 2004, his cast still was dry, clean, and intact and he had no complaints. (Doc. 26-2 at 4; Doc. 24 ¶ 6-13.)

On March 27, 2004, Moultrie was taken to Geisinger for a follow-up consultation. (Doc. 24 ¶ 6-16; Doc. 26-2 at 14.) Moultrie denied any complaints and denied any weight bearing on the lower extremity cast. (Doc. 24 ¶ 6-16; Doc. 26-2 at 14.) The cast was removed, and there was a small area of necrosis with wound breakdown. (Doc. 24 ¶ 6-16; Doc. 26-2 at 14.) This area was debrided, and instructions were given to change the dressings every day and return for a follow-up visit in one week. (Doc. 24 ¶ 6-16; Doc. 26-2 at 14.)

On April 10, 2004, an x-ray was taken of Moultrie's foot at Geisinger. (Doc. 24 ¶ 6-17.) The x-ray showed the surgical plate attached to the second metatarsal and a surgical screw bridging the plate with the second cuneiform. (*Id.*; Doc. 26-2 at 22.) There was no evidence of fracture or osteomyelitis. (Doc. 26-2 at 22.) Following this examination, Moultrie was determined to be physically stable and was transferred to the State Correctional Institution at Camp Hill ("SCI-Camp Hill"). (Doc. 24 ¶ 6-18; Doc. 26-2 at 24.) His foot remained in a cast. (Doc. 24 ¶ 6-18; Doc. 26-2 at 24.) Before Moultrie was transferred, a notation was made in his chart indicating that he would require a follow-up in four weeks and that a transfer sheet was sent with this instruction. (Doc. 24 ¶ 6-18; Doc.

26-2 at 24.) On May 20, 2004, Moultrie's medical records were sent from LCCF to SCI-Camp Hill after an authorization was provided for their release. (Doc. 26-3 at 5-6.)

## II.    Analysis of Claims

### A.    Excessive Use of Force Claim

The undisputed facts in this case clearly establish that Defendants Piontkowski and Lynch are entitled to summary judgment as to Moultrie's excessive use of force claim. The use of excessive force against prisoners may constitute cruel and unusual punishment in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). The Eighth Amendment protects inmates from "unnecessary and wanton infliction of pain." *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citations and internal quotations omitted)). In general, conduct that reaches the level of cruel and unusual punishment is "repugnant to the conscience of mankind" and "inconsistent with contemporary standards of decency." *Whitley*, 475 U.S. at 327 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 106 (1976)).

Even though a plaintiff need not allege a serious injury to state a claim, the Eighth Amendment does not protect against reasonable uses of force. *Hudson*, 503 U.S. at 7, 9-10. "[T]here is no constitutional violation for '*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" *Brooks v. Kyler,* 204 F.3d 102, 107 (3d Cir. 2000) (quoting *Hudson*, 503 U.S. at 9-10). However, the degree of injury, if any, is a relevant factor in the determination of the excessiveness of the force used. *See id.* at 106.

When an inmate plaintiff raises an excessive use of force claim, the core judicial inquiry is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *See id.* (quoting *Hudson*, 503 U.S. at 7.) The following factors guide this inquiry:

> (1)'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them' and (5) 'any efforts made to temper the severity of a forceful response.'

*Id.* (quoting *Whitley*, 475 U.S. at 321).

The undisputed facts in this case clearly establish that Defendants Piontkowski and Lynch did not use excessive force in violation of the Eighth Amendment.  Defendant Piontkowski's testimony under penalty of perjury establishes that Moultrie was involved in a physical altercation with inmate Johnson.  (Doc. 26-5 at 2 ¶ 2.)  After Piontkowski removed Moultrie from the cell, Moultrie attempted to go back to assault Johnson, thereby necessitating the use of force by Piontkowski to subdue him and place handcuffs on him. (*Id.*)  Piontkowski's undisputed sworn testimony establishes that he brought Moultrie under control using the least amount of force necessary.  (*Id.*)  The sworn testimony of Defendant Lynch also establishes that he did not physically assault Moultrie, and in fact, did not have any physical contact with him whatsoever.  (*Id.* at 7 ¶ 2.)  Accordingly, summary judgment will be entered in favor of Piontkowski and Lynch on Moultrie's excessive use of force claims.

11

### B. Denial of Adequate Medical Care Claim

The undisputed factual record in this case also establishes that Defendants are entitled to summary judgment as to Moultrie's claim that he was denied adequate medical care. In order to establish an Eighth Amendment claim against a defendant for inadequate medical care under § 1983, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions . . . that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

"An inmate can show deliberate indifference where, for example, prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering." *Goodrich v. Clinton County Prison*, 214 Fed. Appx. 105, 111 (3d Cir. 2007) (citing *Lanzaro*, 834 F.2d at 346) (internal quotation and citation omitted)). "Alternatively, deliberate indifference is shown where knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care or where prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to [a] physician capable of evaluating the need for such treatment."

*Id.* (citing *Lanzaro*, 834 F.2d at 346-47) (internal quotations and citations omitted)).

The undisputed factual record submitted by Defendants establishes that they are entitled to summary judgment as to Moultrie's claims regarding the medical care he received. Initially, the Court notes that Moultrie did not assert his medical claims against any of the named Defendants. However, he named the LCCF as a Defendant, and thus to the extent that his claims are against members of the LCCF staff, including Nurse Burke, they are entitled to summary judgment on this record.

The undisputed record reflects that Moultrie received immediate medical care after he complained of an injury to his right foot. He was examined immediately after he complained of his injury by Nurse Burke, who testified that, upon physical examination of Moultrie, he observed no redness or swelling of the right ankle. (Doc. 26-5 at 9 ¶ 1.) Further, Moultrie's medical records reflect that his right foot was x-rayed on February 25, 2004, the day after he sustained the injury. (*See* Doc. 26-2 at 5-6.) The undisputed record also establishes that Moultrie was examined by an orthopedic specialist on February 28, 2004, three (3) days after the fractures in his right foot were diagnosed. (*See id.* at 3.) His medical records reflect that the surgery to repair the fractures in his foot was performed on March 6, 2004, approximately ten (10) days after he sustained the injury. (*See id.* at 10-13.) In addition, Moultrie's medical records reflect that he received follow-up care at Geisinger on March 27 and April 10, 2004. (*See* Doc. 26-2 at 14, 22.)

The undisputed record also reflects that Moultrie received adequate medical treatment at the LCCF before and after his surgery. His medical records show that he received pain medication beginning on March 3, 2004, three (3) days before his surgery.

(*See* Doc. 26-2 at 4.)  On that date, Vicodin was prescribed.  (*See id.*)  On March 7, 2004, one day after his surgery, new orders for Percocet were made.  (*See id.*)  Notations on Moultrie's chart reflect that his cast was monitored by the LCCF staff on a daily basis during the week following his surgery and that he was given pain medications through March 11, 2004.  (*See id.*)  His chart reflects that on March 12 and 13, 2004, he did not offer any complaints, and thus there was no indication that pain medication was administered.  (*See id.*)

The undisputed factual record submitted by Defendants establishes that Moultrie received prompt and adequate treatment for the injury to his right foot, including surgery within one (1) week, follow-up appointments with the medical staff at Geisinger, and follow-up care within the LCCF, including monitoring of his foot before and after his surgery and administration of medication to treat his pain.  Accordingly, Defendants are entitled to summary judgment as to Plaintiff's medical claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 23) will be granted.  An appropriate Order follows.


October 27, 2008                         s/ A. Richard Caputo
                                         A. RICHARD CAPUTO
                                         United States District Judge

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC MOULTRIE, :
:
    Plaintiff, : CIVIL NO. 3:CV-06-1153
:
v. : (Judge Caputo)
:
LUZERNE COUNTY PRISON, *et al.*, :
:
    Defendants. :

## **ORDER**

**NOW, THIS 27th DAY OF OCTOBER, 2008,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

    1.    Defendants' Motion for Summary Judgment (Doc. 23) is **GRANTED**.

    2.    Judgment is entered in favor of Defendants the Luzerne County Correctional Facility, Michael Piontkowski, and Michael Lynch.

    3.    The Clerk of Court shall **CLOSE** this case.

    4.    Any appeal from this Order will be deemed frivolous, lacking in probable cause, and not taken in good faith.

                                     s/ A. Richard Caputo
                                     A. RICHARD CAPUTO
                                     United States District Judge